UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 25-CR-198 (CJN) |
| v. : | |
| : | |
| CURTIS LEAR, : | |
| : | |
| Defendant. : | |

**UNITED STATES' MEMORANDUM IN AID OF SENTENCING**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, submits this memorandum in aid of sentencing. On the evening of June 21, 2025, at approximately 8:45 p.m., the defendant Curtis Lear drove his black Jeep Patriot sport utility vehicle ("SUV") on the grass turf of the National Mall in the area of 7th Street, SW, between Jefferson and Madison Drives. There, the defendant drove recklessly at a high rate of speed in circles in close proximity to pedestrians. At one point, the defendant drove towards L.N. and J.F., putting L.N. and J.F. in fear of immediate injury. On October 9, 2025, the defendant pled guilty to one count of destruction of government property (18 U.S.C. § 1361) and one count of assault with a dangerous weapon (22 D.C. Code § 402). Pursuant to the plea agreement, the United States agreed to cap its allocution at the midpoint of the defendant's guideline range. For the reasons set forth below, the United States respectfully requests that the Court sentence the defendant to an aggregate term of 39 months of incarceration followed by three years of supervised release. The breakdown of the United States' recommendation is as follows:

- Destruction of government property: 13 months of incarceration with three years of supervised release; and

- Assault with a dangerous weapon: 39 months of incarceration with three years of supervised release to run concurrently.

1

Further, the United States requests that the Court order the defendant to pay $9,165 in restitution for damage that was done to the National Mall. The United States also requests that, during his period of incarceration and supervised release, the Court order the defendant to stay away from and have no contact with L.N. and J.F., and that, during his period of supervised release, the defendant stay away from and have no contact with the entirety of the National Mall.

## BACKGROUND

On the evening of June 21, 2025, the defendant drove his black Jeep Patriot SUV towards the National Mall in Washington, D.C. The weather was warm and clear, and there was a large presence of pedestrians in the area. A well-known two-day food and music festival, the "33rd Annual Giant Barbecue Battle," was taking place in the direct vicinity of the Mall on Pennsylvania Avenue, NW, between 3rd and 7th Streets, which also created an influx of visitors.

Surveillance cameras captured the defendant as he approached, and he was driving recklessly. At 8:38 p.m., while traveling westbound on Independence Avenue, SE, the defendant drove on top of the sidewalk. As the defendant approached New Jersey Avenue, he again decided to drive on top of the sidewalk going northbound for a short distance. The defendant encountered a security barrier, turned around, and continued westbound on Independence Avenue. At 8:41 p.m., the defendant drove through a red light at 4th Street, SW.

**Figure 1. The defendant driving on the northside sidewalk of Independence Avenue.**



**Figure 2. A second view of the defendant.**



**Figure 3. The defendant driving northbound on New Jersey Avenue on top of the sidewalk.**



**Figure 4. The defendant driving through a red light at 4th Street and Independence Avenue. A driver in a black vehicle had to slow down to avoid striking the defendant.**



At approximately 8:45 p.m., the defendant drove onto the Mall's grassy turf on 7th Street. There, the defendant drove in circles at a high rate of speed. The incident was largely captured by surveillance and private cellular phone cameras. Video footage shows the defendant's vehicle

3

driving recklessly and in close proximity to pedestrians.

**Figures 5 to 7. Figures 5 to 7, which are sequentially depicted below, are still photographs of the defendant's vehicle on the National Mall. The defendant's vehicle is circled in red.**







At the time, L.N. was on the Mall with L.N.'s spouse J.F. L.N. reported that a vehicle headed in their direction, intending to hit L.N. and J.F. Indeed, in the proffer of evidence, the defendant admitted to driving "towards L.N. and J.F. at a high rate of speed," and that "[t]his act would reasonably create in another person a fear of immediate injury." In video footage recorded

4

by L.N., L.N. can be heard saying, "that person is going to kill someone." L.N.'s concern seemed to be shared by others who were on the Mall, who appeared to be in fear as evidenced by video footage, which has been widely disseminated on the news and social media.

Law enforcement officers became aware of the defendant's actions but proceeded with caution. U.S. Capital Police Officer Jonathan Haber approached the defendant's vehicle on foot. The defendant rolled down the driver's side window and stated, "It's just a joke." Officer Jared Negron reported that the defendant stood outside of his vehicle and yelled at pedestrians while flexing his arms. Officers later attempted to stop the defendant, but he fled the area.

**Figure 8. The defendant fleeing and leaving a cloud of dust in his path.**



As a result of his actions, the grass on the National Mall was damaged. The quoted total cost of repair was $9,165.

**Figures 9 to 11. Figures 9 to 11, which are sequentially depicted below, are photographs of some of the damage the defendant created.**



**ARGUMENT**

**I.     THE APPLICABLE SENTENCING GUIDELINES**

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007). Although the Sentencing Guidelines are advisory, under *United States v. Booker*, a sentencing court "must consult those Guidelines and take them into account when sentencing." 543 U.S. 220, 264 (2005); *United States v. Brown*, 892 F.3d 385, 399 (D.C. Cir. 2018). The Supreme Court has noted that while the Guidelines provide "the starting point and the initial benchmark" for sentencing, the district court should consider all the § 3553(a) factors. *Gall v. United States*, 552 U.S. 38, 49–50 (2007). The Guidelines' recommended sentencing range will ordinarily "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Kimbrough v. United States*, 552 U.S. 85, 108–09 (2007).

The defendant pled guilty to one count of destruction of government property (18 U.S.C. § 1361) and one count of assault with a dangerous weapon (22 D.C. Code § 402). The parties also agreed that the applicable Guideline range was 10 to 16 months for destruction of government property and 18 to 60 months for assault with a dangerous weapon.

The defendant does not have any criminal convictions but has two military disciplinary actions that happened during his time in the United States Army. Presentence Investigation Report ("PSR") at 9 to 10. In August 2015, the defendant was charged with assault consummated by battery as well as drunk and disorderly conduct after the defendant and a second individual physically assaulted the victim. As a result of the attack, the defendant received an administrative punishment and was demoted. Id. at 9. In November 2015, the defendant was charged with abusive sexual contact and sexual assault. The defendant entered into a pretrial agreement pursuant to

which the defendant was discharged under other than honorable conditions in lieu of undergoing a court-martial. Id. at 10.

## I.   SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)

In addition to the applicable guideline range, the Court should consider the factors listed in 18 U.S.C. § 3553(a):

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed –
>   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>   (B) to afford adequate deterrence to criminal conduct;
>   (C) to protect the public from further crimes of the defendant; and
>   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for –
>   (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
>     (i) issued by the Sentencing Commission . . .; and
>     (ii) that, . . . are in effect on the date the defendant is sentenced; . . .
>
> (5) any pertinent policy statement –
>   (A) issued by the Sentencing Commission . . . and
>   (B) that, . . . is in effect on the date the defendant is sentenced.
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

### A. The Nature and Circumstances of the Offense and the Defendant's History and Characteristics

The defendant's actions were outrageous and shocking to the conscience. Per the National Park Service, the National Mall is "America's Front Yard" and "where the nation comes to

remember and where history is made." *See* National Park Service Website, https://www.nps.gov/nama/index.htm (last accessed January 28, 2026). On the weekend of June 21, 2025, just two weeks before the Fourth of July, people were on the Mall, "America's Front Yard," to rest and relax. The defendant, however, directly attacked the safety of the Mall, damaged property that was meant for everyone's enjoyment, and assaulted L.F. and J.N. The defendant's actions significantly impacted L.F. and J.N. and has made both of them afraid and hesitant to enjoy public spaces. Frankly speaking, the defendant could have easily seriously harmed or killed one of the many pedestrians on the mall with his egregious behavior. This was no minor crime, or, as the defendant stated, "just a joke." Although the United States' is understanding of the defendant's mental health condition and has agreed to a non-trial disposition taking this into account, the defendant's condition does not absolve the seriousness of his crime. Scientific data appears to indicate that persons with schizophrenia "are more likely to be the victims of violence than to perpetrate violence." *See* Wehring, H. & Carpenter, W. 2011. Violence and Schizophrenia, https://pmc.ncbi.nlm.nih.gov/articles/PMC3160236. Indeed, by the defendant's own account, he did not suffer from schizophrenia when he underwent disciplinary actions for the violent crimes for which he was arrested when he was in the Army. Ultimately, as the defendant admitted in the proffer of facts, his actions on June 21 were voluntary and on purpose. The defendant's sentence should reflect this and the seriousness of his crime.

### B. The Need for the Sentence Imposed

The requested sentence of 39 months incarceration is sufficient but no greater than necessary to meet the goals of sentencing. The sentence provides specific deterrence, as it will directly bear on the defendant and his culpability in this offense as well as general deterrence as such a sentence of incarceration will reflect the seriousness of the crime. To award a lesser sentence

8

would send the opposite signal—that individuals such as the defendant can receive a slap on the wrist despite their shocking behavior that was both a direct threat to the public's safety as well as an affront to one of the most iconic National parks.

Perhaps most importantly, the requested sentence will keep our community safe from any further actions by the defendant and hopefully give him pause before engaging in such criminal conduct after his release. The defendant is young—30 years old. Although the defendant has never been incarcerated, he can use this sentence as an opportunity to take advantage of the tools made available by the Bureau of Prisons and through U.S. Probation, receive mental health treatment and stabilize himself so that he can effectively rejoin society upon his release.

### C. The Desire to Avoid Unwanted Sentence Disparities

One of the goals of the Guidelines is to avoid sentence disparities among similarly situated defendants. According to data collected by the United States Sentencing Commission, of D.C. assault cases reported to the Commission in 2024, the average and median sentence lengths were 42 and 31 months, respectively. *See* United States Sentencing Commission, Interactive Data Analyzer, "Sentencing Outcomes—Sentence Length," https://ida.ussc.gov/analytics/saw.dll?Dashboard (last accessed January 28, 2026). Nationwide, the average and median sentence lengths were 76 and 46 months, respectively. Id. The requested sentence is within these parameters. It also is warranted by the seriousness of the offense, the need to protect the public, and to promote respect for the law.

### D. The Need to Provide Restitution to Any Victims of the Offense

The National Mall is a public space and open for all to use for their enjoyment. Funds to maintain the Mall do not come from an endless pot, but directly from the taxpayers. Here, the cost to repair the damage to the Mall was $9,165. Ordering the defendant to pay this amount in

9

restitution would simply make the taxpayer whole. Moreover, the defendant agreed to pay this amount pursuant to the plea agreement.

## CONCLUSION

WHEREFORE, the United States recommends that this Court sentence the defendant to an aggregate term of 39 months of imprisonment followed by three years of supervised release, order the defendant to pay $9,165 in restitution, and order that the defendant stay away from and have no contact with L.F. and J.N. as well as the entirety of the National Mall. The United States' recommendation is within the range of the Guidelines and appropriate given the circumstances of the case.

.

        Respectfully Submitted,

        JEANINE FERRIS PIRRO
        United States Attorney


By:            /s/
        MICHAEL C. LEE
        Assistant United States Attorney
        CT Juris No. 436272
        601 D Street, NW
        Washington, D.C. 20530
        202-252-7745
        Michael.Lee4@usdoj.gov